IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 2:08-00011 |
| | ) | Judge Trauger |
| CHARLES E. RICE | ) | |

## MEMORANDUM

Before the court is the defendant's Motion to Suppress the Fruits of the Search of Defendant Rice's Residence (Docket No. 18), to which the government has responded (Docket No. 21). For the reasons discussed herein, the defendant's motion will be granted.

## FACTS

On September 17, 2008, Agent Bill Randolph of the Thirteenth Judicial District Drug Task Force submitted an Affidavit to Judge John A. Turnbull and requested a warrant to search the residence of the defendant, Charles E. Rice, located at 480 Rice Barnes Lane in Sparta, Tennessee. Agent Randolph's Affidavit stated, in relevant part:

> On September 16, 2008 Agents with the 13th Judicial District Drug Task [Force] (JDTF) were contacted by a confidential source regarding activity by Charles Rice. Agents from the 13th JDTF met with the confidential source at Attorney Shawn Fry's office, with Attorney Fry present during the meeting. The confidential source advised agents that Charles Rice was on his way home to 480 Rice Barnes Lane from California transporting several pounds of methamphetamine. The confidential source advised agents that he would be driving a white Toyota 4 door Matrix belonging to his girlfriend Julie Stinson. Agent Randolph verified through a citizen informant and other law enforcement personnel that Julie Stinson is known to be a girlfriend to Charles Rice. Agent Randolph learned through this confidential source that his information was coming to him from an unidentified citizen informant who was too afraid to talk with law enforcement about Charles Rice. Agent Randolph did convince the citizen informant to talk with him long enough to say that when Mr. Rice arrives home from his trips to California he hides the methamphetamines in flower pots

around the residence. The confidential source advised Agents that Mr. Rice stored stolen motorcycles and motorcycle parts in an outbuilding on the property at 480 Rice Barnes Lane. Agents were also informed that it was a common practice for Mr. Rice to bury money and guns on his property. The confidential source advised agents that Mr. Rice would have a bright yellow older model Chevy Impala on the property for his personal use. The confidential source provided agents with a hand drawn map of the property, the home and the outbuildings on the property at 480 Rice Barnes Lane.

When agents left Attorney Fry's office they ran a criminal history on Charles E. Rice. The criminal history revealed to the agents that Mr. Rice has a long history of arrest, leading as far back as 1970, in California. The history also shows that Mr. Rice has prior arrest for possession of schedule II and schedule VI controlled substances. The arrest records also show that Mr. Rice has been charged with carrying weapons while being in possession of controlled substances and has been charged on more than one occasion with being in possession of an explosive device.

On September 17, 2008 agents from the 13th JDTF drove to 480 Rice Barnes Lane. Agents hoped to speak with neighbors, but found no one at home. Agents had been advised from other law enforcement that there had been numerous complaints made to the White County Sheriff's Department concerning Mr. Rice, from his neighbors. While agents were close to Mr. Rice's residence they observed a white Toyota 4 door Matrix and a bright yellow older model Chevy Impala. Agents also found that the hand drawn map provided to them from the confidential informant was accurate. When agents arrived back at the office a vehicle registration query was performed on Mr. Rice and Julie Stinson. Agents found that Julie Stinson has a 2004 white Toyota Matrix registered to her and that Charles Rice has a 1966 Chevy Impala registered to him.

On September 17, 2008 Agents met with a confidential informant provided to them from other law enforcement personnel. This confidential informant has provided credible and reliable information to law enforcement in the past. This confidential informant has provided information to law enforcement that has led to the arrest and conviction of drug defendants on at least eight (8) separate occasions. This confidential informant advised agents that within the last year to year and a half he provided iodine to Charles Rice to cook methamphetamine. Confidential informant told agents that in exchange for the iodine Mr. Rice would give him money and methamphetamine. The confidential informant advised agents that this exchange took place at least ten (10) times. This confidential informant also advised agents that when Mr. Rice took the trip to California he would have the white Toyota Matrix, owned by Julie Stinson, serviced in Cookeville and he would drive it to California.

2

(Docket No. 18 Ex. B.) On the basis of this Affidavit, Judge Turnbull issued a warrant to search Mr. Rice's residence. (Docket No. 18 Ex. A.) The warrant was executed the following day, September 18, 2008. Mr. Rice and his girlfriend, Ms. Stinson, were present at the time of the search. During the search, police recovered methamphetamine, marijuana, and various drug paraphernalia on Mr. Rice's person and in his bedroom. The police also found a loaded pistol in Mr. Rice's bedroom and a number of other firearms on the property.

## ANALYSIS

Mr. Rice has moved to suppress the evidence discovered in the search of his residence, arguing that the Affidavit fails to establish probable cause, as there was insufficient evidence that the information provided by informants was reliable or that the police corroborated that information and as there was no nexus between his residence and the evidence sought. Mr. Rice also asserts that the good faith exception to the exclusionary rule does not save the evidence seized during the search from suppression.

**I.      Probable Cause**

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In considering the sufficiency of a search warrant and supporting affidavit, courts apply a "totality of the circumstances" approach. *U.S. v. Higgins*, 557 F.3d 381, 389 (6th Cir. 2009); *U.S. v. Allen*, 211 F.3d 970, 972 (6th Cir. 2000) (citing *Illinois v. Gates*, 462 U.S. 213, 230-31 (1983)). A court's review of the evidence supporting a finding of probable cause is "limited to the information presented in the four-corners of the affidavit." *U.S. v. Frazier*, 423 F.3d 526,
3

531 (6th Cir. 2005) (citations omitted). An affidavit is sufficient if "the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *U.S. v. Trujillo*, 376 F.3d 593, 602 (6th Cir. 2004) (citing *U.S. v. Woosley*, 361 F.3d 924, 926 (6th Cir. 2004)); *see also Gates*, 462 U.S. at 238-39; *Higgins*, 557 F.3d at 289. A magistrate's ruling is afforded "great deference," and is reversed only if it was "arbitrarily exercised." *Allen*, 211 F.3d at 973.

Where the contents of an affidavit are premised on an informant's tip, there must be some indicia of the informant's reliability or, in the absence of such indicia, "substantial independent police corroboration" of the information provided by the informant. *Id.* at 976; *U.S. v. Jackson*, 470 F.3d 299, 307 (6th Cir. 2006). Thus, an affidavit may be sufficient "where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past." *Allen*, 211 F.3d at 976. Alternatively, an affidavit containing little information about an informant's reliability may be sufficient if it states that the police corroborated "significant parts" of the information received from the informant. *Jackson*, 470 F.3d at 307. In addition, an affidavit "must state a nexus between the place to be searched and the evidence sought." *U.S. v. Williams*, 544 F.3d 683, 686 (6th Cir. 2008).

The Affidavit in this case is hardly a picture of clarity. A careful reading however, suggests that the information contained in the Affidavit was gleaned from three different informants, one of whom is referred to as a "confidential source," another, as an "unidentified citizen informant," and a third, as a "confidential informant." The first of these informants, denoted the "confidential source," contacted and then met with the police (presumably including

4

Agent Randolph, although the affidavit does not make this explicit) at an attorney's office, where the confidential source informed the police that Mr. Rice was in transit from California to New York transporting several pounds of methamphetamine. The confidential source also provided the police with information about Mr. Rice's car, a yellow Chevrolet Impala, and about a white Toyota Matrix owned by Mr. Rice's girlfriend, Julie Stinson. Finally, the confidential source provided a hand-drawn map of Mr. Rice's property, including the house and outbuildings located on the property.

During the course of this conversation with the police, the confidential source revealed that he had obtained this information about Mr. Rice from another party, denoted the "unidentified citizen informant" in the Affidavit. This individual was "too afraid" to speak with the police about Mr. Rice, but did speak to Agent Randolph long enough to reveal that, when Mr. Rice returns from trips to California, he hides methamphetamine in flower pots around his house and that Mr. Rice stores stolen motorcycles and motorcycle parts in an outbuilding on the property.[1] Additionally, either the confidential source or the unidentified citizen informant—the Affidavit is unclear as to who—informed the police that Mr. Rice commonly buries money and guns on his property.

It is readily apparent that the Affidavit contains few indicia of the reliability of either the confidential source or the unidentified citizen informant. There is nothing to indicate that either

---

[1] The Affidavit is unclear as to the timing of Agent Randolph's conversation with the unidentified citizen informant. The context of the Affidavit, however, suggests that Agent Randolph spoke with the unidentified citizen informant, probably by telephone, during the course of his meeting with the confidential source, that he never met face-to-face with the unidentified citizen informant, and that he himself was unaware of the unidentified citizen informant's identity.

5

of these individuals was identified to the judge who issued the warrant or that the judge was provided with any additional information demonstrating their reliability. Further, the Affidavit does not suggest that either individual had provided the police with reliable information in the past. Moreover, the basis of these individuals' knowledge is unclear, and the Affidavit does not specify whether any of the information provided to the police was known to either the confidential source or the unidentified citizen informant first-hand. Indeed, with respect to the confidential source, it seems apparent that the information he provided was not first-hand, as he readily admitted that he obtained his information from the unidentified citizen informant. Without any such indicia of reliability, these informants' statements do not and cannot provide a substantial basis for a finding of probable cause.

Apparently cognizant of the weakness of the information provided by the confidential source and the unidentified citizen informant, the police subsequently attempted to corroborate certain aspects of that information. To this end, the police obtained Mr. Rice's criminal history, which revealed a number of arrests going back to 1970 in California, including arrests for possession of controlled substances, carrying weapons while in possession of controlled substances, and being in possession of an explosive device. The Affidavit does not reveal any convictions, nor does it indicate when, over the last thirty-nine years, any of these arrests took place, other than to say that they occurred sometime in the previous thirty-nine years.[2]

---

[2]Mr. Rice contends that the inclusion of these arrests in the Affidavit was somehow misleading, as the Affidavit does not explicitly state that Mr. Rice was never convicted of any of these offenses. However, Mr. Rice does not dispute the factual accuracy of the reference to the arrests, and any reasonable reader of the Affidavit would presume that Mr. Rice had no convictions, as such information would most certainly have been included in the Affidavit otherwise.

In addition, the police drove to Mr. Rice's house, where they observed that the house and outbuildings on the property correlated to the hand-drawn map provided by the confidential source and that a yellow Chevrolet Impala and a white Toyota Matrix were parked on or near the property. The police also confirmed that a yellow Chevrolet Impala was registered to Mr. Rice, that a white Toyota Matrix was registered to Julie Stinson, and that Julie Stinson is known to be Mr. Rice's girlfriend. Finally, the police had a meeting with a third informant, denoted the "confidential informant" in the Affidavit. The confidential informant stated that, at least ten times "in the last year to year and a half," he had provided Mr. Rice with iodine to produce methamphetamine and that, in exchange, Mr. Rice had provided him with money and methamphetamine. The confidential informant also stated that Mr. Rice would take trips to California in Ms. Stinson's white Toyota Matrix and that, prior to such trips, he would have the car serviced in Cookeville, Tennessee, although there is no indication in the Affidavit that the confidential informant articulated any connection between these trips and criminal activity on Mr. Rice's part.

Despite the government's argument that these efforts at corroboration support a finding of probable cause, the benign details corroborated by the police, such as the location of the house and outbuildings on the property, the ownership of the two cars, and a criminal history dating back nearly four decades, had no bearing on any criminal activity alleged to have recently taken place at Mr. Rice's residence.[3] *See Higgins*, 557 F.3d at 390 (stating that police corroboration of

---

[3]Although the government argues that Mr. Rice's criminal history in California demonstrates a connection to California, where Mr. Rice is alleged to have traveled to procure methamphetamine, it does nothing to demonstrate a connection between Mr. Rice's property and the evidence sought there.

7

defendant's residence, ownership of a motorcycle, and drug-related criminal history did not support informant's assertion of drug-related criminal activity). Further, although the Affidavit indicates that information received from the confidential informant was reliable on the basis of that individual's history of providing quality information to the police, the information provided by the confidential informant with respect to Mr. Rice specifically does not support the conclusion that evidence of a crime would be found at Mr. Rice's home at the time it was searched. Once again, the staleness of the information is an issue, as the confidential informant provided Mr. Rice with iodine in exchange for methamphetamine and money at some unspecified time in the previous twelve to eighteen months.[4] Moreover, the confidential informant did not specify whether any of the transactions took place at Mr. Rice's residence, and thus did not establish any nexus between Mr. Rice's residence and the evidence sought.

In attempting to establish sufficient corroboration by using the information provided by the confidential informant to shore up the reliability of the information provided by the confidential source and the unidentified citizen informant, the Affidavit simply erects an unstable, and unsustainable, house of cards. Considering the totality of the circumstances, the Affidavit does not provide a substantial basis for concluding that probable cause existed for the search of Mr. Rice's residence.

## II.     Good Faith Exception

---

[4] The court also notes the inconsistency between the theories apparently espoused by the confidential informant, who suggested that Mr. Rice manufactured methamphetamine at his home using iodine that he provided, and the confidential source, who suggested that Mr. Rice transported methamphetamine from California by car.

8

In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court established a good faith exception to the exclusionary rule, holding that the exclusionary rule does not apply to evidence obtained by police officers who, in good faith, reasonably rely on a warrant issued by a detached and neutral magistrate. To qualify for the good faith exception, however, an officer's reliance on a warrant must be "objectively reasonable," *id.* at 922-23, and an officer is not entitled to submit a "bare bones" affidavit to obtain a warrant and then claim protection of the good faith exception, *id.* at 923 n.24. To that end, the good faith exception is not available (1) where information contained in the affidavit was knowingly or recklessly false; (2) where the magistrate abandoned his or her judicial role, merely acting as a "rubber stamp" for the police; (3) where a "bare bones" affidavit failed to provide a reasonable basis for a finding of probable cause; or (4) where the warrant was facially deficient such that the officer's reliance was neither in good faith nor objectively reasonable. *Id.* at 924; *U.S. v. Hodson*, 543 F.3d 286, 292 (6th Cir. 2008); *Higgins*, 557 F.3d at 391; *U.S. v. Leake*, 998 F.2d 1359, 1366 (6th Cir. 1993).

Of these four exceptions, the court focuses on the last. Good faith is evaluated by reference to "the objectively ascertainable question whether a reasonably trained officer would have known that the search was illegal despite the magistrate's authorization." *Higgins*, 557 F.3d at 391. Given the lack of any indicia of reliability for either the confidential source or the unidentified citizen informant, the fact that the police only corroborated benign details that had no bearing on any recent alleged criminal activity, and the lack of any temporal or locational nexus between the information provided by the confidential informant and the subsequent search, no reasonably trained officer could have believed the search to be legal, despite the fact that a judge had issued a warrant. Further, although the government relies on *Higgins*, in which

9

the Sixth Circuit held that the good faith exception applied, that ruling was premised on the fact that a named informant told police that he had purchased drugs at the defendant's residence earlier that day, which, the court held, provided a "sufficient link" between the defendant's home and drug activity. *Id.* at 391. No such link exists here and, thus, the good faith exception does not save the evidence seized during the search from suppression.

## **CONCLUSION**

For the reasons discussed herein, the Motion to Suppress the Fruits of the Search of Defendant Rice's Residence will be granted.

An appropriate order will enter.

                                                                                                    _____
                                                                                                    ALETA A. TRAUGER
                                                                                                    United States District Judge